[File No. Cr. 191]

STATE OF NORTH DAKOTA, Respondent, v. GABRIEL TEN-
NYSON, Appellant.

(14 NW(2d) 168)

Opinion filed April 14, 1944

*P. D. Norton,* of Minot, for appellant.

*Theo. A. Sailer,* State's Attorney, *W. J. Austin,* Special Assistant
Attorney General, *Floyd B. Sperry,* Associate Counsel, Hon. *Alvin C.*

*Strutz,* Attorney General, and *P. O. Sathre,* Assistant Attorney General, on appeal, for respondent.

NUESSLE, J. On April 28, 1942, Floyd B. Sperry, then state's attorney of Mercer County filed an information in the District Court of that county charging that "* * * heretofore, towit, on or about the 27th day of October, 1939, in Mercer County, North Dakota, one Gabriel Tennyson, late of the county of Bottineau and state aforesaid, did commit the crime of stealing property without and bringing into the state, committed as follows towit: That the said defendant, and other persons, then and there, did wilfully, unlawfully, wrongfully, wantonly, maliciously, feloniously, intentionally and knowingly, take, steal, and carry away, personal property, consisting of nine (9) head of cattle and one (1) calf, said property being then owned by one John Marr, residing in the Dominion of Canada, and brought into the State of North Dakota, by said defendant and the said other persons, said stealing having been accomplished by fraud and stealth, with intent to deprive the owner of said property, and which property was at said time, of a value exceeding $425.00, and which acts did deprive the owner of said property, said parties in committing said acts having traveled through Mercer County, North Dakota." The defendant Tennyson was arraigned on the charge contained in this information and entered his plea of guilty thereto. The court received the plea and entered judgment of conviction thereon.

Thereafter the defendant Tennyson moved to vacate and set aside the judgment and for an order granting him a new trial with leave to withdraw his plea of guilty and enter a plea of not guilty. This motion was denied. Whereupon he perfected the instant appeal.

The defendant predicated his motion on the grounds that he had not had the benefit of counsel; that he had been induced by threats and false promises on the part of the prosecuting officers to enter his plea of guilty; that he was not guilty; that, if given an opportunity to present his defense he would be able to establish his innocence.

The record is voluminous and confusing. Affidavits in support of the defendant's motion and in opposition thereto were filed in profusion. They contain not only the purported facts from the viewpoints

of the respective parties, but are replete with criminations and recriminations. The most pertinent facts, as we sift them from this confusion, are briefly as follows:

The defendant is a farmer. He lives in Bottineau County, North Dakota, not far from the Canadian line. He farms a considerable acreage. He has a wife and two small children. The cattle described in the information were stolen from one Marr, a resident of Canada. They were smuggled across the line into Bottineau County and taken thence to Fargo, North Dakota, and sold. It does not certainly appear that the defendant in fact stole the cattle and brought them across the line, but it seems that he had them in his possession after they were brought across, knew they were stolen, drove them to his farmstead, and the next morning helped load them into a truck owned by one Erdman. Erdman took them, traveling on the highway from the defendant's farm to Minot, thence southeasterly on Highways 52 and 10 to Fargo, where he sold them. He turned the proceeds of the sale over to one Barker, who divided the money among Tennyson, Erdman, himself and others. This happened in 1939.

On April 11, 1942, the defendant was arrested on this charge on a warrant issued out of a justice court in Mercer County. Mercer County is something over 100 miles distant from Bottineau County, the county of defendant's residence. The defendant employed an attorney to look after his defense. This attorney sought to arrange with the prosecuting officers of Mercer County to give him notice of any hearing that might be had of the case. They agreed to do this. In the meantime the defendant remained at his farm, his attorney having secured for him an undertaking conditioned on his appearing on the date that any hearing might be set. On April 25, two deputy sheriffs of Bottineau County went to the farm and told the defendant they had been directed by the officers of Mercer County, to take him into custody and bring him to Mercer County for a preliminary examination. The sheriff of Bottineau County sent a friendly letter with these officers to Tennyson, which reads as follows:

"Dear Gabriel:

You are due at Mandan tomorrow at two o'clock, they will meet you there and then go on to Golden Valley for arraignment in the

Justice Court and all you have to do when the complaint is read to you is to say you waive examination, bail will then be fixed and it may be the bail bond furnished here will answer the purpose.

P. D. Norton called me up this evening and asked me to instruct you as outlined above.

My boys will be around Bismarck during the afternoon, and they can call up Sperry before they come home and learn if you can return to the farm. If so they will wait until you can get back to Mandan and then take you back to the farm.

Yours very truly,"

So Tennyson went willingly with the deputy sheriffs. They took him to Mandan in Morton County, some 150 miles from his home where they put him in the county jail. This was on Saturday the 25th. He remained in jail until Monday, when the officers from Mercer County came to Mandan and took him some sixty miles farther to the latter county for his preliminary examination before the justice of the peace who had issued the warrant. They put him in jail there. The prosecuting officers told him they had six charges against him. He had brought the bond that had been prepared in anticipation of his coming to Mercer County, but they refused to accept it. He was anxious to get home. He says the officers told him they would require a substantial bond in each of the six charges which they said they were prepared to file against him; that if he would plead guilty to two of the offenses they would recommend clemency, and he would receive suspended sentences and that this was the easiest way for him to get back to his farm and to his family. The officers deny this. His attorney could not be present. Tennyson says he telephoned to his attorney and told him that he had been promised clemency and a suspended sentence if he would plead guilty, and asked what he should do. His attorney said he would not advise him to plead guilty but he could use his own judgment in the matter. In any event, after being in jail overnight, he waived examination, signed a statement denominated a "confession" prepared by the prosecuting officers, in the following words:

"Gabriel Tennyson, being first duly sworn upon oath, deposes and states: that he is the above named defendant, and that in the month

of October, 1939, the defendant, with one Frank Barker, Fred Erdman and Albert Cruise, arranged for the taking, stealing, carrying away and disposing of nine head of cattle, and one calf, owned by one John Marr, in the Dominion of Canada, which property was brought into the state of North Dakota, arrangements therefor having been made in Mercer County, North Dakota, and said property having been disposed of in North Dakota, the same having been sold for $425, which proceeds were thereafter divided among said parties, after said money therefrom was returned to Mercer County, North Dakota, and that the affiant has advised the State's Attorney for Mercer County, North Dakota, that he wishes to enter a plea of guilty to said charge, as set forth in the criminal information herein, said affiant being guilty of said crime.

The undersigned is making this statement of his own free will and accord, and without any promises or threats of any kind having been made to him, and upon being informed of all his rights, including the right to aid of counsel, and his right to a hearing and trial herein." This was sworn to before the justice of the peace.

Thereupon the officers took the defendant back to Mandan and there before the Judge of the District Court in chambers presented the statement in question and having procured leave to do so filed the information hereinbefore set forth. Tennyson was arraigned. He stated he wanted no lawyer and wished to plead guilty. The plea was received and judgment of conviction was entered against him. His sentence was two to five years in the state penitentiary.

Above we have set forth the information in full. It is, to say the least, inartificially drawn. Evidently it is drawn pursuant to the provisions of § 9928, Comp. Laws 1913, which provides: "Every person who steals the property of another in any other state or country, and brings the same into this state, may be convicted and punished in the same manner as if such larceny had been committed in this state; *and such larceny may be charged to have been committed in any county into or through which such stolen property has been brought."*

Under this statute there is no jurisdiction in the first instance to try a charge on account of a larceny committed in another state or country unless the property so stolen is brought into or through the

county in which the prosecution is had. And § 10,516, Comp. Laws 1913 is to the same effect. So even though the defendant in the instant case was a party to the theft of the property in Canada or to the bringing of it into the state of North Dakota or though he received it in the state of North Dakota knowing it to have been stolen, there was in the first instance no jurisdiction in the District Court of Mercer County to convict him on account of such offenses unless the property was brought by him and his associates into or through that county. In this connection, see also §§ 10,397 Comp. Laws 1913, et seq; State v. Robinson, 71 ND 463, 2 NW(2d) 183, 140 ALR 332.

Now it is clear that the property, the subject of the alleged larceny, was never brought within Mercer County. The prosecuting officers knew this at the time they prepared and filed the information. The statement which they procured Tennyson to sign, and which they presented to the court, contained nothing from which one might infer that the property had been brought into Mercer County. There is no admission in it that Tennyson did more than arrange with Barker and the others to steal the property in question. Neither did the complaint on which the justice issued the warrant of arrest contain any allegation that the property had been brought into or through Mercer County. The information itself charges only that "said parties in committing the said acts having traveled through Mercer County." What acts? Certainly an obscure charge that the property had been brought into or through Mercer County if, by the greatest strain in construction it can amount to that. And, considering the record, it is open to the inference that it was thus obscurely charged in order to avoid a plain and direct allegation of something as a fact that was not known to be a fact. Zeal on the part of public officers in performing their duties is to be commended. But such zeal as results in transcending the constitutional guaranty that no person shall be deprived of his liberty without due process of law deserves only censure and rebuke. However culpable a defendant in a criminal case may be, however much he may deserve punishment at the hands of the law, no conviction ought to be obtained or sustained on the theory that the end justifies the means.

But it is urged that, in any event, the defendant by his plea of

.guilty waived the right to object to the trial of his case in Mercer County. We are unable to agree with this contention considering the facts that are disclosed by the record. The defendant had no counsel present when he was arraigned and pleaded. True, he said he did not want counsel. But he was a farmer not a lawyer. He could not have known what his rights were under the law. He was in a strange county, far from home. He was concerned about his home and farm and the work that had to be done there. He had been kept in jail for several days. Under the circumstances shown it is not strange that he followed the course he did. The district court, relying on his statement that he did not want counsel and wished to plead guilty, on the alleged confession signed by him, and on the statements of the prosecuting officers, accepted the plea without further inquiry as to the facts. No plea of guilty should be received, especially where the defendant has no counsel to protect his rights, without the fullest and most careful inquiry as to the facts touching the charge involved. In such a case it is the duty of the court to see to it that the defendant has the benefit of every right that under the law is his. And here, if the defendant did not know he could not properly be tried in Mercer County, it ought not to be held that by his plea he waived the right to object to being tried there. We are certain that had the district judge been· fully apprised of the facts and circumstances from all of which it appears that the court was without jurisdiction to try the case, he would not have accepted the plea of guilty. And by the same token defendant's motion to vacate and set aside the judgment and for a new trial should have been granted.

Accordingly, the order appealed from is reversed and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

Morris, Ch. J., and Burr, Christianson and Burke, JJ., concur.