STATE of North Dakota, Plaintiff and Appellee,

v.

Ray ROHWEDER, Defendant and Appellant.

Crim. No. 750.

Supreme Court of North Dakota.

April 23, 1981.

Walter M. Lipp, State's Atty., McClusky, for plaintiff and appellee State of North Dakota.

Gordon O. Hoberg, Napoleon, for defendant and appellant.

VANDE WALLE, Justice.

Ray Rohweder appeals from a judgment of conviction entered by the district court of Sheridan County. Rohweder was convicted of the crime of bringing cattle into North Dakota without a certificate of health that certified that such cattle were free from symptoms of contagious, infectious, or communicable disease. We affirm.

Rohweder buys, sells, and raises cattle. In the spring of 1979, Darrel Rausch, a farmer and cattle dealer from South Dakota, contacted Rohweder and asked if he had any Holstein heifers that would be acceptable for Korean buyers. Rohweder agreed

to haul the heifers to Rausch's farm at Hoven, South Dakota, in late May or early June. Between the time of the contact by Rausch and the trip to South Dakota, Rohweder was asked by Dale Kerzmann, a farmer and a cattle dealer in Sheridan County, North Dakota, if he had any Holstein heifers for sale. Rohweder informed Kerzmann that he had some heifers but that he was sure they were sold. Rohweder subsequently transported the cattle to Rausch's farm in South Dakota where the cattle were placed in federally inspected, isolated holding pens to wait sale to the Korean buyer. On June 1, Rohweder drove to the Rausch farm where he was informed by Rausch that the letter of credit for the Korean buyer did not materialize and that the Korean buyer was unable to take delivery of the cattle. Rohweder then called Kerzmann and told him that he did have some heifers for sale and that Kerzmann could look at them. On June 2, Kerzmann drove to Wishek, North Dakota, where Rohweder lives, and Rohweder and Kerzmann drove to Hoven, South Dakota, to inspect the cattle. Kerzmann sorted out and selected 45 head of cattle which he wanted to purchase. The price was agreed upon and Kerzmann agreed to pay the transportation costs from Hoven to Kerzmann's ranch in Sheridan County. Rohweder offered to have the cattle checked by a veterinarian at Rohweder's son's livestock market at Wishek to be certain the cattle were clean and free of disease. Kerzmann asked Rohweder to have Kerzmann's brand placed on the cattle while they were at the livestock market in Wishek. Rohweder offered to attempt to find a truck from a "back-haul" to pick up the cattle for Kerzmann. Rohweder and Kerzmann returned to Wishek, at which time Kerzmann gave his branding iron to Rohweder as well as his check for the price of the cattle which he asked Rohweder to hold for a few days. Rohweder gave Kerzmann a bill of sale for the livestock. On that same day, June 2, because Rohweder could not find a truck from a "back-haul" to transport the cattle from Hoven, Rohweder sent a driver he regularly employed to Hoven with Rohweder's horse trailer and two other horse trailers to pick up the cattle. The cattle were brought back to Wishek that same day and placed at the livestock market. A few days later, a veterinarian checked the cattle and issued a health certificate. The cattle were transported from Wishek to Kerzmann's ranch in Sheridan County by another trucker, who was paid for his services by Kerzmann. Subsequently Kerzmann contacted a veterinarian from the State Livestock Sanitary Board who inspected the cattle at the Kerzmann ranch and quarantined the herd. The veterinarian signed a complaint in Sheridan County justice court against Rohweder for bringing cattle into North Dakota without a certificate of health.[1] The matter was tried before a 12–person jury in Sheridan County justice court. Rohweder was found guilty and filed a notice of appeal with the district court of Sheridan County. By stipulation the parties agreed to a trial without a jury. A new trial[2] was held before Dennis A. Schneider, judge of the district court of Sheridan County. Judge Schneider found Rohweder guilty and imposed a $200 fine. This appeal followed.

Rohweder sets forth three issues on appeal:

---

1. Rohweder was charged with a violation of Section 36–14–05, N.D.C.C. That section provides:

   "*Cattle brought into state—Certificate of health required.* All cattle brought into this state for dairy, breeding, and feeding purposes shall be accompanied by a certificate of health certifying that such animals are free from symptoms of contagious, infectious, or communicable disease, except that no health certificate is required for those cattle originating directly from a producer's premises and not diverted en route, if such cattle are delivered directly to a licensed auction market or other premises approved by the livestock sanitary board."

   Section 36–14–21, N.D.C.C., provides that any person who shall knowingly violate any provision of Chapter 36–14, N.D.C.C., for which another penalty is not provided, is guilty of a Class A misdemeanor.

2. See Sections 27–18–05 and 33–12–34, N.D.C.C., and Rule 37, N.D.R.Crim.P., governing the procedure for appeals from county justice court to district court.

1. "Did the District Court error in finding that Defendant Ray Rohweder was responsible for bringing the cattle into the State of North Dakota without a health certificate when they were sold to a buyer at Hoven, South Dakota?"

2. "Did the District Court error in finding that a health certificate was needed when the policy of the State Veterinarian was followed, which policy allows cattle to cross the State line and be returned to the State of North Dakota without a health certificate when the cattle are in South Dakota for only a short time?"

3. "Did the District Court error in finding that the crime occurred in Sheridan County, North Dakota?"

I

■ Rohweder's first issue presents the argument that the cattle were owned by Kerzmann, not Rohweder, at the time they were transported from South Dakota to North Dakota without the required health certificate. Rohweder does not dispute the fact that he arranged for the transportation of the cattle from South Dakota to North Dakota using one of his own employees and horse trailer for that transportation, but Rohweder argues that at the time of transporting he no longer owned the cattle and therefore he cannot be held responsible for violating the provisions of Section 36–14–05, N.D.C.C. The district court made no determination on the question of whether or not title to the cattle had passed from Rohweder to Kerzmann in South Dakota. The district court determined that ownership of the cattle was not a required element of the offense under Section 36–14–05. We agree. Although there may be a question as to the time the title to the cattle passed from Rohweder to Kerzmann, a decision on that issue is not pertinent to a determination that Rohweder committed a violation under Section 36–14–05. An examination of that statutory provision [see footnote 1] reveals that ownership of the cattle is not an element of the crime. Section 36–14–05 simply prohibits any person from bringing cattle into North Dakota without a health certificate. It is possible, depending upon the factual situation, that more than one person may be charged with a violation of the statute. But the fact that other persons might have been charged with a violation, but were not, does not excuse Rohweder. If we were to assume that title to the cattle passed to Kerzmann in South Dakota, the fact remains that Rohweder was the one who offered to arrange for the transportation of the cattle from South Dakota to North Dakota. He directed his employee to transport the cattle. The facts reveal that Rohweder was an experienced cattle dealer who had transported cattle into North Dakota previously and that he was aware of the requirement that a health certificate was needed to transport cattle into the State of North Dakota. If title to the cattle had passed to Kerzmann, Rohweder could have refused to arrange for the transportation unless the required health certificate were obtained. Because ownership of the cattle is not an element of the offense charged, and because Rohweder was responsible for bringing the cattle into the State of North Dakota without a health certificate, the ownership of the cattle was immaterial.[3]

3. Rohweder argues that the cattle are "goods" within the meaning of Section 41–02–46, N.D. C.C., establishing rules for the passing of title under the Uniform Commercial Code. Assuming that cattle are "goods," we note that subsections 2 and 3 of the section provide:

"2. Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

"a. if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

"b. if the contract requires delivery at destination, title passes on tender there.

"3. Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

## II

Rohweder also claims as error the conclusion by the trial court that a health certificate was necessary to bring the cattle from South Dakota to North Dakota. His argument is that the cattle were taken to South Dakota the 1st of June, retained in isolated, federally inspected pens for less than 48 hours and returned to North Dakota on June 2, and that under an unwritten policy adopted by the State Livestock Sanitary Board no health certificate is needed in such instances. In an attempt to prove the policy, Rohweder called as a witness Larry Kolb, who farms and lives in South Dakota. Kolb described an incident in 1980 in which he purchased cattle in North Dakota, transported them to his farm in South Dakota, and, two weeks later, determined he was unable to borrow sufficient money to pay for the cattle and asked the owner of the Wishek Livestock Market if he could return some of the cattle to the market for sale, using the proceeds to pay for the cattle to be retained. Kolb testified that he contacted a veterinarian who, in turn, called Dr. Flagg of the State Livestock Sanitary Board. Dr. Flagg is reported to have said it was permissible for those cattle to come into North Dakota without the health certificate because they had been in South Dakota for a very short period of time, i. e., about two weeks. Rohweder notes the cattle he transported were in South Dakota for less than 48 hours.

The trial court considered that argument and rejected it. The only exception to the law is that provision found within Section 36–14–05, N.D.C.C., which permits cattle originating directly from a producer's premises to be delivered directly to a licensed auction market without a health certificate. Because the cattle in question did not originate directly from a producer's premises

"a. if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
"b. if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."
Rohweder argues that subsection 3(b) of this section applies because the cattle were identi-

that exception does not apply. In addition to relying upon the testimony of Kolb, Rohweder attempted to establish the policy of the State Livestock Sanitary Board through the testimony of the veterinarian, Dr. Janecek, who was involved in the Kolb transaction and who contacted Dr. Flagg of the State Livestock Sanitary Board. The Kolb transaction took place in 1980, after the violation with which Rohweder is charged. There was no other testimony given concerning this alleged policy of the Livestock Sanitary Board. Dr. Robert C. Reed, Assistant State Veterinarian, did testify as a State witness. On cross-examination counsel for Rohweder attempted to elicit information as to a policy of the Livestock Sanitary Board permitting cattle to be brought into North Dakota without a health certificate:

"Q. I see. Now, if he would have proved to you that they were his cattle and that they had been down there less than 48 hours, would there be any violation?

"A. The law doesn't say anything about proof of whose animals they are. It states that any cattle brought into the state must be covered by a health certificate, regardless of who they are. We have cattle moving to South Dakota for pasture and they must be covered by a permit and health certificate to cross that line, and this is in both directions at the present time.

"Q. Okay. Let's pursue that matter a little further. Cattle that are in North Dakota and taken down and put in the South Dakota pasture, brought back at a later date, do they need a health certificate?

"A. They do.

.　　.　　.　　.　　.

fied and no document of title was to be delivered. However, Rohweder did give Kerzmann a bill of sale for the cattle at Wishek. If ownership of the cattle was a requisite for violation of Section 36–14–05, N.D.C.C., a question would arise as to when title to the cattle passed to Kerzmann under the facts adduced at the trial.

"Q. Doctor, isn't it a fact that your board that you work for and possibly you or Dr. Flagg have allowed cattle to move from North Dakota down to South Dakota and come back without a health certificate as long as it's been only for a short period of time?

"A. I don't believe that's been provided in that way at all. The party that has taken some of them to markets in other states must still get a certificate to bring them back.

"Q. And—

"A. They are supposed to; let's put it that way.

"Q. And if somebody would have called your board or you or Dr. Flagg and asked to bring cattle back in the State of North Dakota, you would always tell them—I'm sorry. I think I said South Dakota.—bring back into North Dakota, that have moved from North Dakota into South Dakota and came back within a few hours, you would tell them that they could not do this?

"A. If they had had a health certificate when they moved down there, we would have probably approved them to move back if they had not mixed with other cattle, but there again, they would have had to call for a permit or the veterinarian would have had to write a certificate that they had not mixed and did return.

. . . . .

"Q. Okay, Doctor. . . . Isn't it a fact that North Dakota cattle [are] moved from North Dakota into South Dakota pastures and are returned without a health certificate?

"A. If they are, they're in violation.

. . . . .

"Q. Has your board or you or Dr. Flagg—have you established a policy with sales barns and people that are located close to the South Dakota line—have you established a policy which allows these people to take cattle from a North Dakota place into South Dakota and bring them back within a few days without obtaining a health certificate?

"A. Not so far as I know. The reason for that is unless there's some type—. . ."

Counsel for Rohweder also questioned Dr. Reed as to the arrest of persons alleged to have violated the law and Dr. Reed responded that information concerning such violations were submitted to the State's Attorney for action and it was for that officer to determine if he would prosecute. Thus the only witness from the State Veterinarian's office to testify disclaimed that there was a policy of allowing cattle to come into North Dakota without a health certificate even if they had originated in North Dakota and had been in South Dakota only a few hours. The trial court determined there was no evidence that Rohweder had permission, if such could be given by the State Veterinarian, to bring the cattle into North Dakota without a health certificate and that because there was no reliance on such permission given directly to Rohweder his conduct did not fit within the exception of Section 12.1–05–09, N.D.C.C.[4] In determining whether or not the evidence is sufficient to support a verdict the evidence must be viewed in the light most favorable to the verdict. *State v. Chyle,* 297 N.W.2d 409 (N.D.1980). We conclude there was adequate evidence to support the trial court's judgment of conviction.

### III

Rohweder's final challenge is to the venue of the action. He attacks the

---

4. Section 12.1–05–09, N.D.C.C., provides:

"Except as otherwise expressly provided, a person's good faith belief that conduct does not constitute a crime is an affirmative defense if he acted in reasonable reliance upon a statement of the law contained in:

"1. A statute or other enactment.

"2. A judicial decision, opinion, order, or judgment.

"3. An administrative order or grant of permission.

"4. An official interpretation of the public servant or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the crime."

finding of the trial court that the crime occurred in Sheridan County. Rohweder's position is that if he was responsible for bringing the cattle into North Dakota he is responsible only for bringing them to Wishek, in McIntosh County, but not to Sheridan County. Actions for violation of the provisions of Chapter 36–14, N.D.C.C., are directed by Section 36–14–15, N.D.C.C., which reads:

"If livestock is brought into this state in violation of any provision of this chapter or contrary to any rule or regulation of the state livestock sanitary board, the state veterinarian or other accredited agent of the board shall notify the state's attorney of the *county into which such livestock has been brought.* Immediately upon receiving such a notice the state's attorney shall bring an action against any person, ... charged with bringing, transporting, or importing livestock contrary to any provision of this chapter ..." [Emphasis supplied.]

Section 29–03–04, N.D.C.C., provides:

"When a crime or public offense is committed in part in one county and in part in another, or when the acts or effects thereof constituting, or requisite to the consummation of, the offense occur in two or more counties, the jurisdiction is in either or any of said counties."

Rule 18, N.D.R.Crim.P., provides that in all criminal prosecutions, the trial is to be held in the county in which the offense was committed, except as otherwise provided by law or by rule.

It is apparent from reading these statutes, together with the rule, that a charge of bringing cattle into the State of North Dakota without a required health certificate may be tried in any county through which or to which the person charged brings the cattle. In *State v. Tennyson,* 73 N.D. 262, 14 N.W.2d 168, 170 (1944), the court, in considering whether or not Mercer County was the proper county in which to venue an action charging the defendant with bringing stolen property (cattle) into the State, said:

"So even though the defendant in the instant case was a party to the theft of the property in Canada or to the bringing of it into the state of North Dakota or though he received it in the state of North Dakota, knowing it to have been stolen, there was in the first instance no jurisdiction in the District Court of Mercer County to convict him on account of such offense *unless the property was brought by him and his associates into or through that county."* [Emphasis supplied.]

If, after the cattle were delivered by Rohweder to McIntosh County, he had nothing more to do with them, we might agree with him that the venue of the action would not be Sheridan County but rather would be McIntosh County or any other county through which the cattle were brought from South Dakota to Wishek. However, our review of the evidence indicates that Rohweder also arranged, although he did not pay, for the transportation of the cattle from Wishek to Sheridan County. Thus on cross-examination by Rohweder's counsel, Kerzmann testified:

"Q. Ray Rohweder never delivered these animals to you in Sheridan County; did he?

"A. The trucker did.

"Q. And that trucker was your trucker, paid by you?

"A. I never knew the guy until that day. Ray was going to arrange for the trucking. I was to pay the trucker when he got there.

"Q. So what Ray did was order a truck for you; is that correct?

"A. Yeah.

"Q. Did you designate any specific truck?

"A. No."

On direct examination of Rohweder by his counsel Rohweder testified:

"Q. Who paid for the trucking, by the way, from Wishek to Sheridan County?

"A. Dale Kerzmann paid for it.

"Q. Who arranged the trucking?

"A. I called Ally Goettertz to haul the cattle.

"Q. Why did you do that?

"A. Well, because we didn't know when Doc would get these cattle tested to go so he wouldn't know when to get one of his trucks lined up, so I told him I'd take care of getting a truck lined up.

"Q. Was it just as a favor or to fulfill his request?

"A. Right.

"Q. Did he request that you get a truck?

"A. Well, I don't know if he requested it. We just talked over about getting a truck to haul the cattle, and I told him I'd try and get a back haul. When I couldn't get the back haul, why, he pulled full freight on the cattle from Wishek to his place."

The trial court considered the challenge to the venue and determined that once the cattle were brought into North Dakota each county through which they were transported could have brought the charge, but because of double jeopardy, the defendant could be placed on trial in only one of the counties. The trial court further determined that although Rohweder did not do the actual transporting of the cattle into North Dakota he met the requirements of an accomplice under Section 12.1–03–01, N.D.C.C., and therefore was guilty of the offense.[5]

Because Rohweder arranged for the transportation of the cattle from Wishek to Sheridan County, although he did not pay for such transportation, we conclude Sheridan County was one of the counties in which the action could be properly venued. *State v. Tennyson, supra.*

In summary, there is adequate evidence in the record to conclude that Rohweder was aware of the health-certificate requirement and that he arranged for the transportation of the cattle from South Dakota to Wishek, North Dakota, and from Wishek to Sheridan County, North Dakota, without such a certificate. There is a lack of adequate evidence to conclude that the State Livestock Sanitary Board had a policy of permitting, under circumstances such as these, cattle to be brought into North Dakota without such a certificate or that Rohweder did, in fact, rely upon such a policy. Although Rohweder argues that other persons involved with the transportation of these cattle into North Dakota without a health certificate could have been charged with a violation, that is not the issue before us. Rohweder has neither alleged nor proved a defense of discriminatory enforcement nor do we determine whether or not such a defense is a valid defense in these instances. See *Malony v. Cass Cty. Court of Increased Jurs.*, 301 N.W.2d 112 (N.D. 1980). In any event, the evidence disclosed that the transportation of the cattle from South Dakota to Wishek, North Dakota, and from Wishek to Sheridan County, North Dakota, was, at all times, actually arranged by Rohweder.

The judgment of conviction is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

5. Subsection 1 of Section 12.1–03–01, N.D.C.C., provides:

"1. A person may be convicted of an offense based upon the conduct of another person when:

"a. Acting with the kind of culpability required for the offense, he causes the other to engage in such conduct;

"b. With intent that an offense be committed, he commands, induces, procures, or aids the other to commit it, or, having a statutory duty to prevent its commission, he fails to make proper effort to do so; or

"c. He is a co-conspirator and his association with the offense meets the requirements of either of the other subdivisions of this subsection.

"A person is not liable under this subsection for the conduct of another person when he is either expressly or by implication made not accountable for such conduct by the statute defining the offense or related provisions because he is a victim of the offense or otherwise."