**GENERAL MOTORS ACCEPTANCE COR-PORATION, a corporation, Appellant,**

v.

**Walter E. KEIL, Pemberton and Keil, Inc., a corporation, Gene Taylor and Taylor-Isenhower, Incorporated, a corporation, Appellees.**

**No. 53511.**

Supreme Court of Iowa.

May 5, 1970.

Fisher, Pickens & Barnes, Cedar Rapids, for appellant.

B. E. Hunter, Reinbeck, and John W. Pieters, Waterloo, for appellee Gene Taylor.

REES, Justice.

Appellant as assignee of a written conditional sale contract or security agreement allegedly encumbering an automobile sought to recover the possession of the vehicle by replevin. Appellee Taylor claimed ownership as an innocent purchaser for value from vendor, and asserted appellant had failed to properly perfect its lien. Trial court quashed writ of replevin and ordered restoration of possession to appellee. We reach the same result for a different reason.

The appellant filed its petition in the District Court of Black Hawk County against Walter E. Keil, Pemberton and Keil, Inc., Gene Taylor and Taylor-Isenhower, Incorporated, asserting it is the assignee of a written conditional sale contract or security agreement dated October 17, 1966, which was assigned to it by the defendant Pemberton and Keil, Inc., and which was noted as a first lien upon Iowa certificate of title number 86–60223, being the certificate of title to the automobile involved in this controversy, a 1967 Bonneville four-door hardtop Pontiac, having manufacturer's serial number 262397X103824. The defendants, Walter E. Keil and Pemberton and Keil, Inc., defaulted and prior to trial the appellant dismissed without prejudice its petition as against the defendant Taylor-Isenhower, Incorporated. An order was entered authorizing the issuance of a writ of replevin and on January 31, 1968, the writ of replevin was served upon the defendant and the appellant took the automobile into its possession thereunder.

Pemberton and Keil, Inc. is or was at all times material a corporation engaged in the automobile business at Traer, Iowa, and was the franchised Pontiac dealer. Walter E. Keil was the president of the corporation and the active officer in the operation of the business. On or about September 22, 1966, the automobile here involved was the subject of a manufacturer's certificate of origin showing that the automobile had been transferred from the manufacturer to Pemberton and Keil, Inc. On October 7, 1966, Pemberton and Keil, Inc., by Walter E. Keil, president, executed the first assignment which appears on the reverse side of the manufacturer's certificate of origin, and transferred the certificate of origin to Pemberton and Keil, Inc., and also executed an application for a certificate of title to the vehicle. On the same date the treasurer of Tama county issued certificate of title number 60233 for the automobile and also issued 1966 Iowa license plates numbered 86–9078. On October 17, 1966, Walter E. Keil, individually and personally, executed a conditional sale contract covering the automobile which was executed by him as the buyer and by Pemberton and Keil, Inc., by Helen Kathleen Keil, vice president, as the seller, which contract provided for payment in 36 monthly installments of $103.49, commencing November 1, 1966. The conditional sale contract was assigned to the appellant by the seller, Pemberton and Keil, Inc., on the date of its execution, and also on the same date Pemberton and Keil, Inc., by Walter E. Keil, president, executed an application for the notation of lien, asking

that a lien in favor of the appellant in the amount of $3725.64 be noted on the certificate of title to the automobile. The lien was so noted by the treasurer of Tama county on the certificate of title. The certificate of title was never transferred to show Walter E. Keil personally as the owner when the conditional sale contract was executed or at any time thereafter.

Some time shortly prior to July 28, 1967, the appellee, Taylor, who had on prior occasions purchased automobiles from Pemberton and Keil, Inc., made arrangements for the purchase of the automobile in question, and on July 28, 1967, after some negotiations with Walter E. Keil he traded in his 1963 Bonneville Pontiac automobile and delivered his personal check in the sum of $2053.42, payable to "Pemberton-Keil", as the entire balance for the transaction, and took possession of the automobile. The automobile at the time of the negotiations for its purchase was situated in the showroom of Pemberton and Keil, Inc., and bore either dealer's plates or paper plates but did not bear 1967 Iowa license plates. In fact, no 1967 license plates had been secured for the automobile until some time after July 28, 1967. The speedometer of the automobile disclosed the fact that it had been driven about 2000 miles. One other 1967 automobile was on display in the shop area of the garage. The appellee was not aware that there was a lien on the automobile and he never was furnished the certificate of title thereto. All, in fact, he did receive was a slip of paper showing the total purchase price for the automobile was $4012.54, that he was allowed $1959.12 for his traded-in-car, and that the balance was the amount represented by his check, $2053.42.

The appellee, by way of answer to the appellant's petition, denied generally all of the allegations of the petition, and affirmatively alleged he had purchased the automobile without knowledge of the appellant's alleged lien or security interest in the same, and under the provisions of section 554.-9307, subsection (1), Code, 1966, as amended, he is entitled to priority over any security interest of appellant. Motions to dismiss, to strike, and for more specific statement were filed by the appellant, as was a motion for summary judgment. None of these motions were ruled on or otherwise disposed of until hearing was had to the court. On August 29, 1968, the court entered its findings of fact, conclusions of law and rulings on the motions, and its decision. The trial court found, concluded and determined the appellant's claim to the automobile is not entitled to recognition by the court and that the appellee was entitled to a judgment for the return of the automobile to him. The court did not determine the question of damages sought by the appellee for the claimed unlawful detention of the automobile by the appellant, which damages were sought in a third division of appellee's answer and counterclaim.

We have before us here an appeal and cross-appeal as well as a motion on the part of the appellee-cross-appellant to dismiss the principal appeal. Appellant, General Motors Acceptance Corporation, asserts only one error upon which it relies for reversal, namely, that the trial court erred in holding that the plaintiff, General Motors Acceptance Corporation, who had its purchase money lien noted upon the certificate of title of the 1967 Pontiac automobile in question since October of 1966, was not entitled to possession of said vehicle as against the defendant-appellee, Gene Taylor, who claims to have acquired the vehicle in July, 1967, and had only a cancelled check and an informal type of receipt dated November 20, 1967, to evidence his claim.

The trial court held General Motors Acceptance Corporation failed to properly perfect its lien. We need not pass upon this question as we believe defendant is entitled to prevail upon his cross-appeal whether G.M.A.C.'s lien was valid or invalid.

I. We should first dispose of the contention of the appellee that the appellant's notice of appeal is fatally defective, that it does not sufficiently specify the decree, judgment, order or part thereof appealed from. Notice of appeal is set out in the abstract of the record. It is directed to Walter E. Keil, Pemberton and Keil, Inc., Gene Taylor, B. E. Hunter and John W. Pieters, attorneys for the defendant Gene Taylor, and to the clerk of the district court. It adequately apprises the persons to whom it is directed that the appellant, General Motors Acceptance Corporation, is appealing to this court from the final judgment entered on or about August 29, 1968, all findings of fact, conclusions of law, rulings on motions, and decision, and from all rulings, orders, decisions and adjudications inhering therein. Service of the notice of appeal seems to be as prescribed. We have reviewed the authorities cited by appellee in support of his contention and find no merit.

II. In his cross-appeal the defendant Taylor claims: (1) he is a buyer in the ordinary course of business and under the Uniform Commercial Code takes free of any security interest created by his seller, and (2) that the court erred in sustaining objections lodged by plaintiff-appellant to questions propounded to the defendant, Gene Taylor, on the grounds the same were violative of parol evidence rule, statute of frauds and were irrelevant, incompetent and immaterial.

The appellant contends, and we agree generally, that the creation and perfection of liens on motor vehicles is governed by the provisions of Section 321.50, Code, 1966. The appellant contends the entire transaction here is governed by the provisions of Sections 321.45 to 321.50, both inclusive. This is obviously true except in the perfection of security interests in motor vehicles held by dealers in inventory for resale, in which case the provisions of the Uniform Commercial Code are applicable in determining the priorities of conflicting interests in all goods including motor vehicles. Section 321.50(1) and (5), Code, 1966.

Section 321.45(2) provides, "No person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to him for such vehicle or by virtue of a manufacturer's or importer's certificate delivered to him for such vehicle; nor shall any waiver or estoppel operate in favor of any person claiming title to or interest in any vehicle against a person having possession of the certificate of title or manufacturer's or importer's certificate for such vehicle for a valuable cnsideration except in case of

"a. the perfection of a lien or security interest by notation on the certificate of title as provided in section 321.50, or

"b. the perfection of a security interest in new or used vehicles held as inventory for sale as provided in Uniform Commercial Code, chapter 554, Article 9, or

"c. a dispute between a buyer and the selling dealer who has failed to deliver or procure the certificate of title as promised, or * * *."

Particular note must be taken of the provisions of subsection (b) above, which excepts new or used vehicles held as inventory for sale. Section 554.9307(1) provides,

"A buyer in ordinary course of business other than a person buying farm products subject to a perfected security interest from a person engaged in farming operations, takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." True it is one financing vehicles in the inventory of a dealer can, or is permitted to, obtain and perfect a general lien over the inventory by filing a financing statement. This would serve to perfect a security interest. The appellant contends however that once a certificate of title has been obtained then

the party holding the security interest has the option of having his lien noted on the certificate of title to any vehicle in question. The trial court held appellee Taylor was not entitled to the protection of section 554.9307, and from this ruling the appellee Taylor has cross-appealed. We do not agree with the trial court in this holding.

III. The record discloses no reason for the transfer of the manufacturer's certificate of origin by Pemberton and Keil, Inc., to itself and the securing of a certificate of title in the name of the corporation, in which ownership it rested.

Section 321.48(4) provides, "Nothing in this section shall be construed to prohibit a dealer from obtaining a new certificate of title and transfer of registration in the same manner as other purchasers."

Such action may have been taken by the corporation to protect itself, or in the hope of protecting itself from a contention that the vehicle remained in inventory. The dealer might have adopted this plan to enable him to claim, or attempt to claim, that the sale from the corporation to the corporation itself and the securing of a certificate of title for the vehicle brought the vehicle into a classification of consumer goods, and removed the same from inventory. Under the facts here, however, where the automobile was displayed on the showroom floor for resale, such an argument would appear to be specious. This court would be constrained to look behind such a close transaction. The contention of the appellant that the sale of the motor vehicle was from Walter E. Keil personally to the appellee is likewise specious in view of the fact the check given by the appellee for the balance of purchase price was made payable to "Pemberton-Keil", delivered to Walter Keil and accepted by him, and that he made no effort to separate his personal ownership, or claimed personal ownership, of the vehicle from his display of the automobile and the holding of the same out for resale by the corporation. The appellant makes no effort to explain why the transaction was handled in the manner in which it was handled. Appellee was justified in believing he was buying a car from the inventory of Pemberton and Keil, Inc., and not from Walter Keil personally.

IV. Appellee claims he was a buyer in the ordinary course of business and as such takes the property free from any security interest under section 554.9307(1) of the Uniform Commercial Code. This section does not deal with the perfection of liens but with the preference given purchasers from stocks of goods in the ordinary course of business over the holders of liens, albeit valid liens. Appellant claims that even if the cited section of Uniform Commercial Code were applicable to transactions covered by sections 321.45 to 321.50, Code, that the appellee can claim no benefit under such application because his seller was Pemberton and Keil, Inc., and the security interest was created by Walter Keil, individually. This contention is hardly consistent with the position appellant takes when arguing that the certificate of title was "duly issued". The title rested in Pemberton and Keil, Inc., and was regular on its face. The application for the notation of the lien to appellant was made by the president of the corporate titleholder. The automobile was purchased from the showroom of the corporate titleholder. We see no reason why the purchaser of an automobile should not be afforded the same protection as the purchaser of other property out of inventory, and we refuse to hold that the Legislature, which obviously intended broad protection to the consumer by enactment of section 554.9307(1), would anticipate the giving of preference to a lien because its creator was not as shown on the records, but another party under a confidential transaction of which the ultimate purchaser had no knowledge. We fully appreciate that we reach the same eventual result as the trial court, but for a different reason. It is our duty to affirm if any proper basis appears for the ruling of the trial court even though it is not the one on which it was put or on which the

court acted. In re Will of Smith, 245 Iowa 38, 46, 60 N.W.2d 866. Many a learned court is occasionally right for the wrong reason, as the court said in Folsom v. Grove, 233 Iowa 1140, 1142, 11 N.W.2d 368. A court decision which is proper on any ground shown by the record will not be disturbed merely because the decision is based on an unsound or erroneous reason. Mechanicsville v. State Appeal Board, 253 Iowa 517, 525, 111 N.W.2d 317; Schnabel v. Vaughn, 258 Iowa 839, 845, 14 N.W.2d 168; McCoy v. Totten, 259 Iowa 699, 702, 145 N.W.2d 662.

■ V. During course of trial, the appellee Taylor was permitted to testify over plaintiff's objection that while he was negotiating for the purchase of the automobile it was on the showroom floor of Pemberton and Keil, Inc., at Traer, Iowa, bearing either dealer's plates or paper plates but not bearing 1967 Iowa license plates, and that the Iowa license plates for the vehicle were not secured until after his purchase of the vehicle, and that on or about the date he purchased the automobile the speedometer reflected that the automobile had been driven about 2000 miles and that there was on display one other 1967 Pontiac automobile in the business place of Pemberton and Keil, Inc., and that when he entered into the transaction he was not aware there was a lien on the automobile and never received the certificate of title thereto. The objection which was lodged to the interrogatories which elicited the above testimony was that the questions put to Taylor were incompetent, irrelevant and immaterial, that the witness was incompetent to testify to the transaction in that it is violative of the statute of frauds and of the parol evidence rule, and constituted an attempt to vary a written document, namely, the certificate of title and the conditional sale contract by oral testimony and that it was in violation of the Iowa certificate of title laws contained in Code sections 321.45 through 321.50. This was treated as a standing objection throughout all of the testimony of the appellee Taylor. In its final ruling the court sustained the objection to all of such testimony on the ground it was offered in violation of the Iowa certificate of title law as contained in sections 321.45 through 321.50, Code, 1966. The appellee has cross-appealed from this ruling of the court. We feel such standing objection should have been overruled. It must be remembered Taylor was not a party to the transaction having to do with the securing of the certificate of title which issued to Pemberton and Keil, Inc., and the title to the vehicle still rests in the name of said corporation. This was not an attempt to testify by a party to the transaction, that is to say, Pemberton and Keil, Inc., or the appellant, General Motors Acceptance Corporation, and the testimony of Taylor was designed merely to establish the chronology of the transaction. Nissen v. Sabin, 202 Iowa 1362, 1363, 212 N.W. 125; 50 A.L.R. 1216; 32A C.J.S. Evidence § 861, p. 226. As supportive of its contention that the trial court was correct in sustaining the standing objection, the appellant cites Varvaris v. Varvaris, 255 Iowa 800, 124 N.W. 2d 163; 100 A.L.R.2d 1215. In that case the court held that evidence of an oral gift of motor vehicles by a person since deceased was inadmissible, and that a gift of the automobiles could not be made without assigning the certificates of title. This case is, therefore, distinguishable from the facts in the Varvaris case.

■■ "Oral evidence is not allowable to work a change or variance in the terms, conditions, etc., as fairly expressed by the writing. But this rule is enforced only where a controversy arises between the parties to the contract or their privies." In re Assessment of Shields Bros., 134 Iowa 559, 562, 111 N.W. 963; Fitzgerald v. Flanagan, 155 Iowa 217, 232, 135 N.W. 738. It has been generally held that a stranger to a writing is not bound by it, and therefore is not, or is not ordinarily, precluded from introducing parol evidence to vary or contradict it. At least, this is true as to a stranger whose rights are para-

 

mount to, or are not dependent upon the writing. 30 Am.Jur.2d 165, Evidence, § 1030. The standing objection to testimony of the appellee Taylor should have been overruled.

VI. This would appear to be a case of first impression in Iowa. The conflict between the certificate of title laws and the provisions of the Uniform Commercial Code has been the subject of much litigation in our sister states. The several authorities from other jurisdictions cited by parties are persuasive but not controlling.

We conclude that the provisions of the Uniform Commercial Code, particularly section 554.9307(1), Code, 1966, govern here. We therefore reach the same result as the trial court by holding for appellee on his cross-appeal.

The trial court is affirmed by reversing on appellee's cross-appeal.

All Justices concur except UHLEN-HOPP, J., who takes no part.