Ladd M. ADAMS et al., Appellant,

v.

CITY NATIONAL BANK AND TRUST COMPANY OF NORMAN,
Oklahoma, Appellee.

No. 50188.

Supreme Court of Oklahoma.

May 24, 1977.

Velmer J. Dimery, Norman, for appellant.

Ben T. Benedum, Benedum & Benedum, Norman, for appellee.

PER CURIAM:

This case presents an issue concerning a conflict under 'the Uniform Commercial Code (U.C.C.) between the holder of a perfected security interest in an automobile and a subsequent buyer of the car. City National Bank and Trust Company of Norman, Oklahoma (Bank) commenced this action against appellant here, Ladd Adams, and Denny and Carol Clanton, seeking replevin of a certain Ford automobile.

The facts stipulated to by Bank and Adams are as follows. Peerson, owner of A–1

Auto Sales, (dealer) displayed the Ford in question on his used car lot for sale. Dealer assigned title to the Ford to Denny Clanton, one of his salesmen. Clanton used title to the Ford as collateral to secure a loan from Bank. The loan application showed Clanton to be a used car salesman. Bank properly perfected its security interest by timely filing. However, the lien was not recorded on the certificate of title.[1] The Ford remained on the lot for sale.

Several days later Adams acquired the Ford by a cash purchase and took possession of the automobile. He was asked to return in three days to pick up the certificate of title. After the sale Clanton reassigned the title to dealer who on the same day delivered it to Adams.

Each party moved for judgment on the stipulated facts. The trial court granted judgment to Bank. The cause of action against the Clantons was dismissed without prejudice for want of service. Adams' motion for new trial was overruled.

Adams appeals to this court claiming he, as a stipulated "buyer in the ordinary course of business"[2] (hereinafter called buyer), is entitled to the Ford, free of Bank's security interest by virtue of 12A O.S.1971 § 2–403(2) and *Medico Leasing Company v. Smith*, 457 P.2d 548 (Okl.1969). 12A O.S.1971 § 2–403(2), (3) provides:

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of

whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

Adams claims because car was entrusted to dealer, a "merchant who deals in goods of that kind," dealer had the power to transfer all the rights of the entruster to him as a buyer in the ordinary course of business free of the security interest of Bank.

Bank submits § 2–403(2) should not be applied to cut off a perfected security interest. Bank argues its security interest remained in the Ford despite its sale to Adams, pointing to 12A O.S.1971 §§ 9–306(2) and 9–307. § 9–306(2) states:

"(2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

One of the exceptions "this Article otherwise provides" is § 9–307:

"Protection of Buyers of Goods.—A buyer in ordinary course of business (subsection (9) of Section 1—201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest *created by his seller* even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis supplied).

Bank relies entirely on the "created by his seller" limitation of § 9–307. It claims dealer, who sold the car to Adams, did not create the security interest. Thus, Bank

---

1. Oklahoma does not require a security interest to be recorded on the certificate of title in order for it to be perfected. However, see 47 O.S. 1971 §§ 23.3, 23.6, which permits such a practice.

2. 12A O.S.1971 § 1–201(9) defines Buyer in ordinary course of business as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the

goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."

argues, § 9–307 has no application and § 9–306(2) requires the security interest to remain in the Ford after its subsequent sale.

An examination of authority from other jurisdictions as well as our own does not show a consistent or pragmatic approach to buyer-secured party disputes such as this. Section 2–403 and § 9–307 are intertwined in Judicial construction but their apparent conflicts are never satisfactorily resolved. Therefore we feel we must discuss the relationship of § 2–403(2) to this situation even though it is not the basis for our decision.

We will first examine whether the circumstances in which Mr. Adams finds himself are such as will invoke protection of his title through § 2–403(2).

In *Medico Leasing Company v. Smith,* 457 P.2d 548 (Okl.1969), cited by Adams, this court relied on the entrustment provision of § 2–403(2) to uphold the right of a buyer of an automobile from a car dealer to title and possession of the car in face of a replevin action by the original owner (entruster). There the owner who entrusted the car to the dealer had good title, unencumbered by a security interest. Consequently the buyer received "all rights of the entruster," which was an unencumbered title.

Adams would have us find *Bank* as secured party, entrusted the Ford to dealer by its "acquiescence in the retention of possession by the dealer under the above cited § 2–403(3) definition of entrusting. Hence

Adams claims dealer would be clothed with the power to transfer unencumbered title to Adams as buyer and under *Medico* he would prevail. However *Bank* was not the owner of the Ford and could not be the entruster. For the purpose of Adams argument, Clanton, the title owner, rather than Bank, entrusted the Ford to dealer. Dealer, a merchant dealing in used cars, sold the car to Adams who was a "buyer in the ordinary course of business." The requirements of § 2–403(2) are met and the sale to Adams is governed by this section. Under its language, dealer then had the power to transfer all of Clanton's (entruster's) rights to Adams. The transaction gave Adams the same title as Clanton, which was title subject to Bank's security interest. Bank's security interest is still intact under § 2–403(2).

Although Adams' claim does not fall within the protection of § 2–403, we do not wish to convey the impression that under no circumstances could a security interest be cut off by this section. The result depends on the quality of title held by the entruster.[3] We have found no authority dealing with the exact set of circumstances we have here but our analysis of § 2–403 is in accord with interpretation by other jurisdictions.[4]

Under § 2–403 Bank's security interest is still unimpaired so if Adams is to be protected through the U.C.C., we must go to § 9–307. Bank's argument a security inter-

3. For example in *Williams v. Western Surety,* 6 Wash.App. 300, 492 P.2d 596 (1972) "physical title" to a mobile home was held by a company which had sold the home to a dealer pursuant to a flooring agreement, thus creating a security agreement in favor of the company. The car changed hands several times. The court held because the secured party was the actual entruster, its interest was transferred to the ultimate buyer in the ordinary course, who took title to the home free and clear of the security interest.

For another example of a hypothetical situation wherein a security interest could be cut off by § 2–403 see *Dugan Buyer-Secured Party Conflicts* under Section 9–307(1) *of the Uniform Commercial Code,* 46 U.Colo.L.Rev. 333, 345–351.

4. For example *White-Sellies Jewelry Co. v. Goodyear Tire & Rubber Co.,* 477 S.W.2d 658 (Tex.Civ.App.1972) stating § 2–403 concerns only naked sale of goods and does not speak to a situation involving goods in which is reserved a security interest; *Commercial Credit Corporation v. Associates Discount Corporation,* 246 Ark. 118, 436 S.W.2d 809 (1969) permitting buyer in ordinary course to take title to car he had purchased from a dealer who had stored it for a repossessing lien creditor with right of sale. *Godfrey v. Gilsdorf,* 86 Nev. 714, 476 P.2d 3 (1970) in which buyer in ordinary course acquired rights of plaintiff under § 2–403 and who had entrusted car to used car dealer. Also see *Couch v. Cockroft,* 490 S.W.2d 713 (Tenn. App.1972); *Humphrey Cadillac and Oldsmobile Co. v. Sinard,* 85 Ill.App.2d 64, 229 N.E.2d 365 (1967).

est may not be severed in favor of a buyer if the security interest was not created by the dealer who sold the car has not been considered in Oklahoma. The most widely cited decision involving a security interest not "created by his seller," is *National Shawmut Bank of Boston v. Jones*, 108 N.H. 386, 236 A.2d 484 (1967). *Shawmut* was an action to replevin a station wagon purchased by defendant from a car dealer. The dealer had acquired the wagon from a private party. The private party had executed an installment contract for the purchase of the car which had been assigned to plaintiff Bank. Defendant otherwise qualified as a buyer in ordinary course of business but the court did not allow him to take free of the security interest. It held § 9–307 permits such a buyer to take free *only* of a security interest created by his seller. In *Shawmut* the security interest of the plaintiff Bank was not created by the dealer or by the dealer's salesman, from which he purchased the wagon. Rather it was created by the original purchaser, the private party who sold the car to the dealer.

 The fact situation in *Shawmut* is one type of circumstance the "created by his seller" limitation is aimed at by the U.C.C.[5] It is illogical to believe when the codal redactors drafted this limitation they anticipated a buyer would not be protected from misrepresentation by a used car dealer or salesman who had manipulated an automobile title for his own benefit. Section 9–307 was generally designed to insure compliance by a retailer under an agreement with his inventory financer not to sell without financer's permission. If a retailer sells goods without the financer's permission, the financer's recourse remains against the non-complying retailer, not the buyer.[6]

Under a strict construction of Article 9, the only way Adams as a buyer could receive the protection of § 9–307 would be for this court to find Clanton, as a used car salesman and owner of Ford was the actual "seller" who "created" the security interest, or if we would find *dealer* as "seller", "created" the security interest through his agent Clanton. Both of these circumventive tactics are exercises in legal gymnastics. Whether dealer or Clanton, his salesman, created the security interest should not be the controlling factor.

There is little doubt that under pre-code law in Oklahoma, Adams would prevail.[7] Adams calls our attention to a decision *Redden v. Haley*, 268 P.2d 270 (Okl.1954) decided prior to Oklahoma's adoption of the U.C.C. There a chattel mortgage was given by an automobile dealer to a mortgagee who thought the car was for the personal use of the dealer. The automobile was subsequently sold to the defendant, an innocent purchaser for value. This court held the mortgage was ineffective against the innocent purchaser because the mortgagee, an experienced auto finance man should have known the automobile would be offered for sale. Mortgagee was therefore estopped to assert his lien against the subsequent bonafide purchaser for value. The result here would follow this decision without question under the U.C.C. were it not for the "created by his seller" limitation.

 "The Uniform Commercial Code has not changed the law in this state regarding clothing an agent with apparent authority to convey title, especially if the agent is one who ordinarily deals in the goods which the principal has entrusted to

---

5. See *Baker Production Credit Association v. Long Creek Meat Co., Inc.*, 266 Or. 643, 513 P.2d 1129 (1973); *Black v. Schenectady Discount Corporation*, 31 Conn.Sup. 521, 324 A.2d 921 (1974); *Security Pacific National Bank v. Goodman*, 24 Cal.App.3d 131, 100 Cal.Rptr. 763 (1972) which also involved the use of the entrustment provisions of § 2–403 to allow buyers the excess proceeds from sale of boat over amount of security interest due to Bank.

6. See Comment 2 § 9–307.

7. See *M. B. Thomas Auto Sales v. Pickle*, 305 P.2d 550 (Okl.1956); *Linton v. Citizen's State Bank*, 361 P.2d 1071 (Okl.1961); *Linton v. Citizen's State Bank*, 368 P.2d 92 (Okl.1962); *Bankers Investment Company v. Humphrey*, 369 P.2d 608 (Okl.1962).

him."[8] Nothing in the comments to Article 9 require the "created by his seller" limitation to be an insurmountable barrier to good faith acquisition of pre-encumbered property from a dealer who himself was instrumental in creating the encumbrance and conflict. In holding against a secured party in favor of a buyer of an automobile, the court in *Idabel National Bank v. Tucker*, 544 P.2d 1287 (Okl.App.1975) quoted from *Texas National Bank of Houston v. Calvin Aufderheide*, 235 F.Supp. 599, 604 (F.D.Ark.1964):

> "Ordinarily, when a person goes into a merchant's place of business to make a purchase, whether it be of an automobile, a television set, a washing machine, or a pound of nails, the purchaser ought to have the right to assume that the merchant has a right to sell the commodity in question and should not be required to make a record search before purchasing or to see to it that the merchant obtains a valid release of the item from a bank floor plan before delivering it to the purchaser and receiving his money or obligation."

For the purpose of this decision under § 9–307, we find the same entity created the security interest and sold the Ford. Accordingly, we hold Bank's security interest in the Ford terminated upon its sale to Adams as a buyer in the ordinary course of business.

REVERSED AND REMANDED for determination by trial court of attorney's fees if any due to Adams.

LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

HODGES, C. J., dissents.

---

8. *Medico Leasing Company v. Smith*, 457 P.2d 548, 550 (Okl.1969); also see 12A O.S.1971 § 1–103.