EXECUTIVE FINANCIAL SERVICES, INC., *Appellant,* v. DONALD H. PAGEL, HENRY D. PAGEL, d/b/a PAGEL and SONS, a partnership; THE JOHN DEERE COMPANY; GENE R. MOHR, JAMES B. LOYD, d/b/a MOHR-LOYD LEASING; and DENNISON STATE BANK, *Appellees,* and

No. 58,046

EXECUTIVE FINANCIAL SERVICES, INC., *Appellant,* v. PAUL S. MORSE, TED R. MORSE, and FRED S. MORSE, d/b/a RIVERVIEW FARMS; MARVIN ALLEN, JR.; JAMES B. LOYD and GENE R. MOHR, d/b/a MOHR-LOYD LEASING; FIRST NATIONAL BANK OF OLATHE; and NORTHEAST KANSAS PRODUCTION CREDIT ASSOCIATION, *Appellees,* v. JOHN DEERE COMPANY, *Third-Party Defendant-Appellee.*

(715 P.2d 381)

Opinion filed February 21, 1986.

*Michael E. Whitsitt,* of Overland Park, argued the cause and was on the briefs for appellant.

*John L. Vratil,* of Lathrop, Koontz, Righter, Clagett & Norquist, of Overland Park, argued the cause and *Gordon E. Wells, Jr.,* of the same firm, and *Daniel M. Dibble,* of Kansas City, Missouri, were with him on the brief for appellees John Deere Company, Marvin Allen, Jr., and Donald H. Pagel and Henry D. Pagel d/b/a Pagel and Sons.

*Martin R. Ufford,* of Redmond, Redmond, O'Brien & Nazar, of Wichita, was on the brief for appellee Northeast Kansas Production Credit Association.

The opinion of the court was delivered by

HERD, J.: These are consolidated actions by Executive Financial Services (EFS) for possession of three tractors and for a determination that it is the owner of the tractors or, in the alternative, that its security interest therein be adjudged prior to the rights of defendants. The district courts granted summary judgment to the defendants and these appeals followed. These actions arise out of the same facts as those set out in *Executive Financial Services, Inc. v. Loyd,* 238 Kan. 663, 715 P.2d 376 (1986) which are repeated here for convenient analysis.

EFS purchased three tractors from Tri-County Farm Equipment Company (Tri-County), a John Deere dealership owned by James Loyd and Gene Mohr. EFS then leased the tractors to Mohr-Loyd Leasing, a partnership between Mohr and Loyd. The first transaction involved John Deere Tractor model No. 8640. On July 19, 1982, on behalf of Tri-County, James Loyd sold the No. 8640 tractor to EFS for $48,000. At the same time, EFS leased the tractor to Mohr-Loyd Leasing. Tri-County gave a corporate guarantee of the lease as authorized by a corporate resolution furnished by Loyd. It was later learned that James Loyd deposited the EFS check to his personal business account.

Similar transactions occurred with regard to two other John Deere tractors. The second sale and lease was completed on August 30, 1982, for $19,000. The third transaction involved a purchase price of $38,000 and was completed on November 3, 1982.

Within two months Loyd sold all three tractors to third parties and Mohr-Loyd Leasing and Tri-County defaulted on the leases. This default was the subject of another action wherein EFS obtained a judgment against Mohr, Loyd, Mohr-Loyd and Tri-

County for breach of contract. See *Executive Financial Services, Inc. v. Loyd,* 238 Kan. 663. That judgment is still unsatisfied, making recovery of the tractors important to EFS.

It is important to note that EFS did not take physical possession of the three tractors. Nor did EFS mark or segregate the tractors from other tractors offered for sale by Tri-County to show that either EFS or Mohr-Loyd claimed an interest in them.

EFS filed financing statements on each of the three tractors with the Johnson County Register of Deeds and the Kansas Secretary of State's office. The statements listed "James B. Loyd and Gene R. Mohr d/b/a Mohr-Loyd Leasing" as the debtor, EFS as a secured party, and each tractor as "equipment leased." The financing statements were filed on July 28, 1982 (tractor model No. 8640); September 10, 1982 (tractor model No. 2940); and November 12, 1982 (tractor model No. 4440).

Tri-County sold the model No. 2940 tractor to Thompson Implement Company of Holton, Kansas, on September 24, 1982, in the ordinary course of business. Thompson is a merchant engaged in the business of selling farm equipment and machinery. Thompson later sold the model No. 2940 tractor to appellees Donald and Henry Pagel doing business as Pagel and Sons (Pagel). On January 27, 1983, Pagel executed a variable rate loan contract-security agreement which granted appellee John Deere Company (Deere) a purchase money security interest in the No. 2940 tractor. Deere perfected its security interest in the tractor by filing a financing statement with the register of deeds' office.

Appellee, Marvin Allen, Jr., purchased the model No. 4440 tractor from Tri-County on November 12, 1982. Allen also executed a variable rate loan contract-security agreement granting Deere a purchase money security interest in the No. 4440 tractor. Deere perfected its interest on November 17, 1982, by filing a financing statement with the register of deeds' office.

Appellees Paul, Ted and Fred Morse, doing business as Riverview Farms, acquired the model No. 8640 tractor from Tri-County in October of 1982. Deere, at one time, claimed a purchase money security interest in the same tractor by virtue of a financing statement filed on October 26, 1982. Northeast Kansas Production Credit Association (PCA) had a security interest in "all farm and ranch machinery and equipment" of Riverview

Farms, which was perfected as of March 17, 1981. PCA and Deere stipulated to the fact that Deere failed to file a financing statement within ten days following delivery of the No. 8640 tractor as required by K.S.A. 84-9-301(2). Therefore, the trial court found PCA's security interest in the tractor was prior and superior to the security interest of John Deere.

When Tri-County sold the three tractors to third parties, Mohr-Loyd defaulted on the respective leases with EFS. EFS then filed the present action.

In granting summary judgment, the district court of Johnson County found Allen and Riverview Farms were buyers in ordinary course of business from Tri-County and pursuant to K.S.A. 84-2-403(2) took free and clear of the security interest of EFS. The district court of Jackson County made a similar finding with respect to the tractor sold to Thompson Implement Company and later to Pagel and Sons and found EFS impliedly consented to the sale of the tractor by Tri-County to Thompson Implement Company. EFS appeals from both judgments.

There are two theories under the UCC which may entitle the buyers of the tractors to prevail in this case. The trial court found the "entrustment theory," codified at K.S.A. 84-2-403(2), applicable. Appellees argue that even if the trial court erred in applying the entrustment theory, the buyers took free of any security interest of EFS under K.S.A. 84-9-307(1).

Our first concern, however, is whether the transaction between EFS and Mohr-Loyd Leasing is covered by the UCC as a secured transaction since EFS "leased" the tractors to Mohr-Loyd and lease transactions are excluded from Article 9.

This issue was addressed in *Atlas Industries, Inc. v. National Cash Register Co.*, 216 Kan. 213, 531 P.2d 41 (1975), where we stated in Syllabus ¶ 3:

"A document denominated a 'lease' may be construed to create a 'security interest' if the terms and contents thereof . . . are more consistent with a security interest than a lease."

K.S.A. 84-1-201(37) provides that whether a lease is intended as security is to be determined by the facts of each case. That section also provides, where the parties have agreed that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no

additional consideration or for nominal consideration, the lease is intended for security.

EFS admits in its brief on appeal the option price for the tractors is nominal as compared to their anticipated fair market value at the end of the lease term and that the lease agreement creates a security interest in each tractor in favor of EFS. This finding is also supported by the fact that EFS filed UCC financing statements on the three tractors, EFS was not a manufacturer or dealer in like equipment and EFS never took physical possession of the tractors.

We hold the transaction between EFS and Mohr-Loyd Leasing was essentially a financing transaction whereby EFS acquired a security interest in the three tractors. The transaction is therefore subject to the UCC.

Having so determined, we turn to the issue of whether the buyers of the tractors took free of EFS's security interest pursuant to K.S.A. 84-9-307(1), which provides:

"A buyer in ordinary course of business . . . other than a person buying farm products from a person engaged in farming operations takes free of a security interest *created by his seller* even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis added.)

Under this section, if Allen, Riverview Farms, Thompson and Pagel were "buyers in ordinary course of business" they would take free of any security interest created "by the seller," which is Tri-County. However, K.S.A. 84-9-307(1) is inapplicable to the facts in this case because Mohr-Loyd created the security interest in question—not Tri-County. A buyer in ordinary course can only take free of a security interest created "by his seller." Since the seller of the tractors, Tri-County, did not create the security interest, the buyers cannot take free of that interest under 84-9-307(1).

We next consider whether, as a matter of law, EFS entrusted the three tractors to Tri-County and, under K.S.A. 84-2-403(2), thereby lost any interest it had in them.

The entrustment doctrine is codified at K.S.A. 84-2-403(2):

"Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."

"Entrusting" is defined in K.S.A. 84-2-403(3):

" 'Entrusting' includes any delivery and any acquiescence in retention of

possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

Since this statute has not been considered by the court in an analogous fact situation, some general background regarding its purpose and effect is helpful.

The Kansas Comment 1983 to K.S.A. 84-2-403 briefly describes the purpose of the provisions in question:

"Subsections (2) and (3) extend prior law in protecting buyers in ordinary course of business from hidden entrusting arrangements with merchant-sellers who deal in goods of the kind. Under these subsections, an owner who entrusts goods to a merchant who deals in goods of the kind may lose his rights as against a buyer in ordinary course of business. Under prior law, such good faith purchasers were protected only under the doctrines of estoppel and the like."

At common law, the mere entrustment of goods to a merchant who dealt in goods of a kind did not estop the owner from recovering them from a bona fide purchaser for value. This common-law rule has been reversed by UCC § 2-403(2), which provides that any entrusting of possession of goods to a merchant who deals in goods of that kind accords the merchant power to transfer all the entruster's rights to a buyer in ordinary course of business. Hawkland, UCC Series § 2-403:07, p. 611 (1984).

The entrustment doctrine operates on the assumption that both the entruster and the buyer have been equally harmed by the dishonesty of the merchant-dealer, and resolves the issue in favor of the buyer. This result is explained in Hawkland, UCC Series § 2-403:07, as follows:

"In a broad sense, section 2-402(2) exemplifies one effort to 'modernize the law governing commercial transactions' in keeping with the underlying philosophy of the UCC. Accordingly, when a housewife takes her vacuum cleaner for repairs to a merchant who also is in the business of selling vacuum cleaners new and old, the sale by him to a buyer in the ordinary course of business passes a good title to the latter. In this case, the equities of the housewife and the buyer may be said to be equal. The housewife may not have been prudent in entrusting her goods to the dishonest dealer, but, by the same token, the buyer may not have been prudent in buying from him. On the assumption that both the entruster and buyer have been equally victimized by the dishonesty of the merchant-dealer, section 2-403(2) resolves the issue so as to free the marketplace, rather than protect the original owner's property rights. The rule, however, is an absolute one and does not depend in its operation on any balancing of equities or notions of comparative negligence." p. 612.

Entrusting typically falls into one of four fact patterns. These

patterns are illustrated in White and Summers, Uniform Commercial Code § 3-11, p. 143 (2d ed. 1980):

"First, Ernie Entruster turns his car over to Dave Dealer so that Dave can sell it for Ernie. A buyer in ordinary course takes free of Ernie's ownership rights. Second, a wholesaler gives Dealer the goods 'on consignment' or under a 'floor planning' agreement. A buyer in ordinary course from Dealer is not bound by any 'title retention' agreement between Dealer and the wholesaler as to passage of title. Third, George leaves goods to be repaired with Dealer who resells them to a buyer in ordinary course. Finally, Edgar buys goods from Dealer but leaves the goods in Dealer's hands. A buyer in ordinary course cuts off Edgar's interest."

The last example is similar to the fact pattern in the present case. EFS purchased three tractors from Tri-County, but left the tractors on Tri-County's lot. Tri-County later resold the tractors to third parties in ordinary course of business. The situation is made more complicated, however, by the fact that prior to the resale by Tri-County, EFS leased the tractors to Mohr-Loyd Leasing, which operated from the same business premises as Tri-County. Furthermore, EFS obtained a security interest in the tractors from Mohr-Loyd Leasing.

Prior to applying K.S.A. 84-2-403(2) to the facts of the instant case, we must consider its potential conflict with our previous application of 84-9-307(1).

Appellant contends that if a buyer does not qualify for the preferred treatment of K.S.A. 84-9-307(1) because the competing security interest is not created by the seller, the buyer cannot then argue it took free of the security interest under the entrustment theory of 84-2-403(2). This argument has received support among some courts and commentators.

White and Summers argue that priority disputes between secured creditors and subsequent purchasers must be governed exclusively by Article 9 and that a subsequent purchaser who is disappointed under 84-9-307 cannot fall back on 84-2-403 and argue that it renders him superior to a prior security interest. They point to the language of 84-9-306(2) which states:

"Except where *this article* otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise . . . ." (Emphasis added.)

See White and Summers, Uniform Commercial Code § 25-15, pp. 1073-74 (2d ed. 1980).

There is also authority, however, for applying the entrustment

theory where a buyer is unable to prevail under 84-9-307(1). In his treatise, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 3.4[3] (1985 Cum. Supp. No. 3), Professor Barkley Clark recognizes that an entrustment theory may be applicable, even when 84-9-307(1) is not applicable:

"But even if the buyer in ordinary course loses his protection under § 9-307(1) because the security interest was created further up the line, he may be able to prevail on a different theory. This is what happened in *In re Woods,* where the buyer discovered that a bank had a perfected security interest in the collateral created by a previous owner. The court determined that the ultimate buyer could prevail on an *entrustment* theory under §§ 2-403(2) and 2-403(3). Those subsections provide that a person who 'entrusts' the possession of goods to a dealer loses title to a buyer in ordinary course from the dealer. In the usual case, the outright owner entrusts the goods to the dealer for repair. In this case, it was the bank with its prior perfected security interest which did the entrusting. Certainly there is nothing in the language of § 2-403 that would limit that provision to outright owners as entrusters. The *Woods* case makes the important point that a prior secured party may do sufficient 'entrusting' so that its security interest is lost, even though the security interest was not created by the dealer to which the goods were entrusted. The court in *Woods* suggested yet another theory to protect the ordinary course buyer: Insofar as the prior secured party permitted the collateral to be delivered to the dealer, it authorized the sale free of its security interest under § 9-306(2). Finally, under either alternative theory, the ultimate buyer was protected even though it knew of the bank's prior perfected security interest; the court correctly concluded that, in order for the secured party to prevail, it would have to show that the ordinary course buyer knew that the sale was in violation of the prior security interest."

The facts here, as in *In re Woods,* 25 Bankr. 924 (Bankr. Tenn. 1982), are distinguishable from the usual case. Typically, the entruster and the holder of the security interest are separate entities with the security holder not involved in the entrustment. In such a case the security interest would continue in the goods because under K.S.A. 84-2-403(2) only the "rights of the entruster" would be transferred. Here, however, the security holder is the entruster and its rights as such are transferred to the buyer.

For K.S.A. 84-2-403(2) to be applicable, three steps are required: (1) An entrustment of goods to (2) a merchant who deals in goods of that kind followed by a sale by such merchant to (3) a buyer in ordinary course of business.

Neither party argues Tri-County is not a "merchant who deals in goods of that kind," but they disagree as to whether EFS entrusted the tractors to Tri-County and whether one of the transferees was a buyer in the ordinary course of business.

The first question for our consideration is whether EFS entrusted the goods to Tri-County. As noted earlier, "entrusting" is defined at K.S.A. 84-2-403(3) and includes "any delivery and any acquiescence in retention of possession."

In support of their theory of entrustment, appellees point out that although EFS purchased the tractors from Tri-County, it did not take possession of them. Nor did EFS segregate the tractors from Tri-County's other inventory, identify the tractors in any way as EFS's property, or otherwise manifest any sign of ownership which would be evidence to a subsequent purchaser. Appellees contend that by its lack of action, EFS acquiesced in Tri-County's retention of possession of the tractors.

On the other hand, EFS argues that the mere fact that EFS did not take possession of the tractors does not justify the conclusion that EFS acquiesced in the retention of possession of the tractors by Tri-County. EFS contends that once it leased the tractors to Mohr-Loyd Leasing with the understanding and representation by Mohr-Loyd that the tractors would be leased out to farmers, it became impossible for EFS to acquiesce in the retention of possession of the tractors by Tri-County.

The reason possession was left with the merchant-seller is immaterial under the Code. 3 Anderson, Uniform Commercial Code § 2-403:42, pp. 592-93. The entrustment definition specifically provides that an entrustment can occur "regardless of any condition expressed between the parties to the delivery or acquiescence . . . ." K.S.A. 84-2-403(3).

Thus, the key factor here is EFS's knowledge that the tractors would remain in the Tri-County lot. The fact that EFS expected Mohr-Loyd to eventually lease the tractors to farmers is immaterial. We conclude the tractors were entrusted to Tri-County by EFS.

EFS next contends that even if an entrustment occurred, the Johnson County District Court improperly applied K.S.A. 84-2-403(2) to the transaction involving Riverview Farms because Riverview Farms was not a buyer in ordinary course of business. There is no dispute that Allen and Thompson Implement were buyers in ordinary course of business.

K.S.A. 84-1-201(9) defines "buyer in ordinary course of business":

" 'Buyer in ordinary course of business' means a person who in good faith and

without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . . 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but does not include a transfer in bulk or as security [for] or in total or partial satisfaction of a money debt."

"Good faith" is defined at K.S.A. 84-1-201(19): " 'Good faith' means honesty in fact in the conduct or transaction concerned."

First, EFS argues the model No. 8640 tractor was not acquired by Riverview Farms for cash or other valid consideration. Rather, EFS contends the tractor was acquired by utilizing $30,000 of credit owed to Riverview Farms by Tri-County. This contention is based on the fact that in March of 1982, Riverview Farms received two checks from Tri-County totalling nearly $30,000. Ted Morse, one of the partners in Riverview Farms, was unable to explain why the checks were given to Riverview Farms. A few months later in August 1982, Riverview Farms delivered a model No. 8630 tractor to Tri-County to be sold by Tri-County.

Appellees argue Riverview Farms acquired the model No. 8640 tractor in an even exchange for the No. 8630 tractor. They concede Tri-County initially offered to sell the No. 8640 tractor to Riverview Farms for a trade-in of the No. 8630 tractor plus $10,000. Later, however, Tri-County agreed to accept the No. 8630 tractor in an even exchange for the No. 8640 tractor. Appellees explained the $30,000 payment to Riverview Farms as credit received when Tri-County sold a No. 7020 tractor and disc which Riverview Farms had traded to Tri-County.

K.S.A. 84-1-201(9) specifically provides that a transfer in total or partial satisfaction of a money debt does not give the purchaser the status of a "buyer in ordinary course." Thus, if Riverview Farms acquired the No. 8640 tractor as the result of a credit obtained initially for the model No. 8630 tractor and the extinguishment of a money debt, it did not have "buyer in ordinary course" status. However, if Riverview Farms acquired the No. 8640 tractor in an even exchange for the No. 8630, it did have buyer in ordinary course status since 84-1-201(9) includes an exchange within the definition of "buying."

The Johnson County District Court made specific findings that Riverview Farms had no actual notice that Mohr-Loyd Leasing existed, that Mohr-Loyd leased the No. 8640 tractor from EFS, or

that EFS claimed any interest in the tractor. We conclude the facts justify the district court's ruling that Riverview Farms, like Thompson, Pagel and Allen, was a buyer in ordinary course of business.

We hold all three tractors were entrusted to Tri-County, a merchant who deals in tractors, by EFS and then sold to Allen, Thompson Implement and Riverview Farms in ordinary course of business.

A final issue presented by this appeal is whether EFS may be estopped from claiming any interest in the tractors. We need not discuss this issue since the case is resolved by our application of the entrustment provisions of K.S.A. 84-2-403(2) and (3).

The judgments of the trial courts are affirmed.