**C & J LEASING II LTD.
PARTNERSHIP,
Appellant,**

Agri Financial Services, Inc., Plaintiff,

v.

Keith K. SWANSON, Nancy L. Swanson,
Michael J. Reilly, and Janet L.
Reilly, Appellees,

Deutz–Allis Credit Corporation, f/k/a Chalmer Credit Corp. and Deutz–Allis Corporation, Allis Chalmers Farm Equipment, Inc., Mahaska Investment Company, Mic Leasing Division, First Interstate Bank of Urbandale, f/k/a Plaza State Bank, Melvin Clark, and Daniel J. Geneser, Defendants.

No. 87–969.

Supreme Court of Iowa.

April 19, 1989.

Rehearing Denied May 12, 1989.

Ronald A. Baybayan, Des Moines, for appellant.

Thomas H. Burke of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL and ANDREASEN, JJ.

NEUMAN, Justice.

This replevin action involves the competing interests of two innocent parties who have been equally harmed by the dishonesty of a farm implement dealer. The question is whether pertinent provisions of the Uniform Commercial Code are meant to favor the buyer of goods in the ordinary course of business or a financier holding a prior security interest in those same goods. The district court ruled in favor of the

secured creditor and that determination was upheld by the court of appeals. We granted the buyer's petition for further review and now vacate the court of appeals decision and reverse the district court.

Because this case was tried in equity, our appellate review is de novo. *Potter v. Oster*, 426 N.W.2d 148, 149 (Iowa 1988); Iowa R.App.P. 4. The particular transaction in issue, though essentially undisputed, carries with it considerable history pertinent to the equities bearing on our result. We therefore set out the facts in some detail.

Defendant Daniel Geneser was a farm implement dealer in Grimes, Iowa. He was also engaged in trading commodity futures contracts. In that connection he became acquainted with appellees Keith Swanson and Michael Reilly, both of whom are investment brokers in Des Moines.[1] Through Geneser, Swanson and Reilly became interested in the investment potential presented by farm equipment sale/lease-back arrangements. By making financed purchases of farm machinery from Geneser, and then leasing that equipment to farmers through Geneser's dealership, Swanson and Reilly stood to gain financial benefits from depreciation, investment tax credits, and deduction of interest expense while receiving rental income from the equipment.

Just such a deal was arranged in January 1982. Geneser sold some farm machinery to Asset Leasing of Waterloo who in turn leased it to Swanson and Reilly with an option to purchase the equipment for one dollar at the end of the lease term. This latter provision made Swanson and Reilly the owners of the machinery subject to Asset Leasing's security interest. *See* Iowa Code § 554.1201(37) (compliance with agreement that lessee has option to become owner for nominal consideration makes lease one intended for security). Swanson and Reilly never inspected or took possession of the equipment. They left it with Geneser to be leased to farmers.

This 1982 transaction led to the current controversy. In June 1984, Geneser sought Swanson and Reilly's authority to refinance the equipment with Agri Financial Services, Inc. (Agri). Swanson and Reilly consented, but instead of refinancing the old equipment, Geneser sold Agri two new combines and corn headers for $137,-000. Agri in turn leased the machinery to Swanson and Reilly under the same terms as the former transaction, thus becoming a secured creditor. Agri properly perfected its security interest. Swanson and Reilly again entrusted the equipment to Geneser with the intent that he would lease it to farmers. He apparently led them to believe he was doing so; in fact, however, the machinery never left the floor of Geneser's dealership.

In December 1984, unbeknown to Agri or Swanson and Reilly, Geneser sold one of the combines and corn headers to appellant C & J Leasing (C & J). The parties do not dispute the fact that C & J was a "buyer in the ordinary course of business;" that is, one who "in good faith and without knowledge that the sale to that person is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind...." Iowa Code § 554.1201(9). Following sale, C & J leased the property back to Geneser and properly perfected its security interest in it.

Geneser made only two lease payments to C & J before filing bankruptcy. C & J and Agri then filed a joint replevin action to establish their right to possession of the machinery. Swanson and Reilly were named as defendants along with Geneser and a number of his creditors.

As between the two plaintiffs, the trial court held that Agri was entitled to possession. It reasoned that C & J, notwithstanding its status as a buyer in the ordinary course, took the property subject to Agri's lien because Swanson and Reilly, not Geneser, had created it. In so ruling, the court

---

1. For ease of identification, these appellees and their individually named spouses will be re-ferred to collectively as "Swanson and Reilly."

relied on that part of section 554.9307(1) that provides "a buyer in ordinary course of business ... takes free of a security interest *created by that person's seller* even though the security interest is perfected...." Iowa Code § 554.9307(1) (emphasis added). The court also rejected C & J's attempt to come under the protective "entrustment" provision of Iowa Code section 554.2403(2) [2], finding Geneser had no title to "entrust" to C & J.

On C & J's appeal from the trial court's ruling, Agri assigned its replevin rights to Swanson and Reilly. We transferred the case to the court of appeals which affirmed Agri's right to the property on essentially the same grounds as the trial court.

In its petition for further review, C & J claims that both the district court and the court of appeals misconstrued the "entrustment" provisions of section 554.2403(2) and the "created by the seller" language of section 554.9307(1). In construing these statutes, the court's goal is to effectuate the intent of the legislature. *See State v. Foster*, 356 N.W.2d 548, 550 (Iowa 1984). We are obliged to uphold the purposes of a statute and engage in a reasonable and liberal construction of the law to effect, rather than defeat, its purposes. *Id.*

■ Section 554.2403(2) provides that a party to whom goods have been entrusted has the power to transfer all rights received from the entrusting party to a buyer in the ordinary course of business. The doctrine "operates on the assumption that both the entruster and the buyer have been equally harmed by the dishonesty of the merchant-dealer, and resolves the issue in favor of the buyer." *Executive Financial Servs., Inc. v. Pagel*, 238 Kan. 809, 814, 715 P.2d 381, 385 (1986). Thus, where an owner of property leases the goods to a dealer who then sells them to a buyer in the ordinary course of business, that buyer may establish priority over the owner of the entrusted goods. *See* 238 Kan. at 819, 715 P.2d at 388.

Section 554.9307(1) provides much the same result in the context of an Article Nine transaction. Thus it provides that a buyer in the ordinary course takes property free of any security interest created by the party who sold it to the buyer. Iowa Code § 554.9307(1). The statute is designed principally to protect the consumer who purchases out of a seller's inventory. *See generally* J. White & R. Summers, *Uniform Commercial Code* § 26-13 at 532-36 (3d ed. 1988). This court has previously observed that its purpose is to give "broad protection to the consumer" who buys out of inventory against prior "holders of liens" on that inventory. *G.M.A.C. v. Keil*, 176 N.W.2d 837, 841 (Iowa 1970).

Authorities differ over how these statutes interact in a case like the present one involving both entrustment and a security interest. *Compare National Shawmut Bank v. Jones*, 108 N.H. 386, 388, 236 A.2d 484, 486 (1967) (asserting that a security interest may be "impaired only as provided in Article 9 and is unaffected by" Article 2); J. White & R. Summers, § 26-16 at 545 ("we conclude that the [UCC] drafters intended that priority disputes between secured creditors and subsequent purchasers be governed exclusively by Article Nine ... [not] the more generous provisions of 2-403") *with Executive Financial Servs.*, 238 Kan. at 813-14, 715 P.2d at 386-87 (concluding 9-307(1) alone applies where entruster is secured party, while both 9-307(1) and 2-403(2) apply when secured party and entruster are separate entities) *and Commercial Credit Corp. v. Associates Discount Corp.*, 246 Ark. 118, 126-27, 436 S.W.2d 809, 813 (1969) (rejecting theory that lien creditors' rights are not included within 2-403 and asserting "entrustment ... is most applicable to a repossessing lienholder with right of sale").

■ Like many of the jurisdictions cited, our own district court and court of appeals attempted to reconcile C & J's claims under both Article Nine and Article Two. We find it unnecessary, however, to enter the

**2.** "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business." Iowa Code § 554.2403(2) (1987).

argument over the propriety of such a double-barrelled analysis. We are convinced that section 554.9307(1), standing alone, furnishes the relief C & J is seeking.

The crucial question is whether, under the peculiar circumstances of this case, C & J comes within the language of section 554.9307(1) that ostensibly limits its protection to buyers in the ordinary course who purchase property encumbered by a lien "created by that person's seller." The court of appeals followed the lead of a number of courts which have strictly construed this provision to mean that if someone other than the *immediate* seller created the lien (as, in this case, Swanson and Reilly) then the lien is not extinguished and the secured party prevails over the buyer in a priority dispute. *Executive Financial Servs.*, 238 Kan. at 813, 715 P.2d at 385; *Exchange Bank of Osceola v. Jarrett*, 180 Mont. 33, 37–38, 588 P.2d 1006, 1009 (1979); *National Shawmut Bank*, 108 N.H. at 388, 236 A.2d at 485–86.

Our own court, however, as well as the Oklahoma Supreme Court, has recognized an exception to this restrictive interpretation of section 554.9307(1) where the creator of the prior lien and the immediate seller are separate but closely related entities, or the seller has been "instrumental in creating the encumbrance and conflict." *Adams v. City Nat'l Bank & Trust Co.*, 565 P.2d 26, 31 (Okla.1977); *see G.M.A.C.*, 176 N.W.2d at 841.

Both *G.M.A.C.* and *Adams* involved automobile dealerships. In *G.M.A.C.*, the president of a car dealership bought a new car off the lot pursuant to a conditional sales contract that was later assigned to G.M.A.C. When the dealership sold the car, seemingly out of inventory, to a buyer in the ordinary course of business, G.M.A.C. sued the buyer to recover possession. *G.M.A.C.*, 176 N.W.2d at 838–39. Likewise, in *Adams*, a dealership assigned a car title to one of its salesmen who gave the title as security for a bank loan. The dealership then sold the car to a buyer in the ordinary course of business, but prior to delivery, the salesman assigned the encumbered title back to the dealership. *Adams*,

565 P.2d at 27–28. On appeal in each case, the court held the buyer was entitled to prevail, as against the "remote" lienholder, on the theory that the legislature did not intend 9–307(1) to give "preference to a lien because its creator was not as shown on the records, but another party under a confidential transaction of which the ultimate purchaser had no knowledge." *G.M.A.C.*, 176 N.W.2d at 841; *see Adams*, 565 P.2d at 31.

The case before us, though involving combines instead of cars, presents a comparable scenario. Geneser told Swanson and Reilly he could arrange to refinance their 1982 farm equipment. Instead, he contacted Agri and convinced it to purchase some new equipment from him that it could lease to Swanson and Reilly. Agri bought the equipment and leased it to Swanson and Reilly, creating its security interest. Geneser knew from past practice that Swanson and Reilly would leave the equipment with him to lease it to farmers. Geneser instead sold the equipment to C & J. Like the sellers in *Adams* and *G.M.A.C.*, Geneser did not create the security interest himself but was instrumental in creating the encumbrance and the conflict that subsequently arose. As between the two victims of Geneser's scam—Agri and C & J—section 554.9307(1) should apply to protect C & J, the buyer.

We think our interpretation of section 554.9307(1) is consistent with the legislative intent expressed in the Code commentary:

> Prior Iowa law was in accord [with § 554.9307] that a good faith buyer of goods takes free of a security interest if he buys from a dealer ... who has been clothed with such indicia of title as to deceive a bona fide purchaser relying thereon (citations omitted).

> Subsection [554.9307](1) is broader than [prior Iowa law], since it allows buyers in the ordinary course of business to take free of a security interest even if the secured party does not explicitly or implicitly authorize the sale.

Iowa Code Ann. § 554.9307 Iowa Code comment (1967).

Clearly the legislature anticipated broad protection for a buyer in the ordinary course of business who, like C & J, had no reason to suspect that seemingly new equipment purchased from a dealer's showroom would be encumbered by other than an inventory lien. We are obligated to effectuate that evident intent. Thus we hold that where a dealer who is not a secured party has been instrumental in creating an encumbrance and the resulting priority conflict for an innocent buyer in ordinary course, courts must apply broadly the "created by his seller" language of section 554.9307(1) to effectuate the statute's protective purposes. C & J Leasing was entitled to that protection here and, accordingly, we reverse and remand to the district court for entry of judgment consistent with this opinion.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED.